TEXAS DEPARTMENT OF
TRANSPORTATION,
Appellant,

v.

CITY OF FLORESVILLE ELECTRIC
POWER & LIGHT SYSTEM,
Appellee.

No. 04–01–00064–CV.

Court of Appeals of Texas,
San Antonio.

June 27, 2001.

449

Meredith Parenti, Asst. Sol. Gen., Ronald E. Garner, Asst. Atty. Gen., Austin, for Appellant.

C. Wilson Shirley, III, David E. Chamberlain, Lea & Chamberlain, Austin, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, and SARAH B. DUNCAN, Justice.

## OPINION

PHIL HARDBERGER, Chief Justice.

The Texas Department of Transportation ("TxDOT") appeals the trial court's order denying its plea to the jurisdiction. TxDOT presents three issues in its brief, contending it is immune from the indemnity claim asserted by the City of Floresville Electric Light & Power System ("FELPS") because: (1) chapter 752 of the Health and Safety Code does not waive immunity from suit; (2) FELPS's claim is not permitted by the Texas Tort Claims Act; and (3) TxDOT is not liable under a theory of joint enterprise. We reverse the trial court's order and dismiss the underlying cause for lack of jurisdiction.

## BACKGROUND

TxDOT entered into a contract with Jim Payne d/b/a Payne Electronic Service Company and/or P.E.S. Company ("PES"). The contract provided for PES to perform maintenance repairs on TxDOT traffic signals in multiple Texas counties. The actual number of traffic signals was not specified in the contract. TxDOT provided PES with a schedule of work and work locations on a daily basis. The contract was to continue for twelve months or until the funds allocated to the contract had been expended.

Section 7.16 of TxDOT's Standard Specifications for Construction of Highways, Streets and Bridges, which was incorporated into the terms of PES's contract, provided:

> Any operations by the Contractor which are located near any electrical power lines shall be accomplished using established industry and utility safety practices. The Contractor shall consult with the appropriate utility company prior to beginning any such work. All associated costs will be the responsibility of the Contractor.

An employee of PES, Clark Neil ("Neil"), was electrocuted when he came in contact with an electrical power line while painting a TxDOT traffic signal pole. Neil was maneuvering the bucket of a bucket truck to paint the other side of the pole when the back of his neck came in contact with the power line. FELPS, the electric company that controlled the power line, had not been notified that the work was to be performed, and no one had requested FELPS to de-energize the power line.

The representative of Neil's minor son, who was his sole beneficiary, brought suit against PES, United Kensington, FELPS, TxDOT, and the City of Floresville. United Kensington and PES had a joint employment arrangement. FELPS filed a cross-claim for indemnity against TxDOT and other defendants. All of the underlying claims except the cross-claim by FELPS against TxDOT were settled, and the cross-claim was severed into a separate suit.

TxDOT filed a plea to the jurisdiction, asserting it was immune from suit. FELPS responded that immunity was waived under chapter 752 of the Texas Health and Safety Code and under the Texas Tort Claims Act. The trial court denied TxDOT's plea to the jurisdiction, and TxDOT timely filed this interlocutory appeal.

## STANDARD OF REVIEW

A trial court's ruling on a plea to the trial court's subject matter jurisdiction is reviewed de novo. *Herring v. Welborn*, 27 S.W.3d 132, 136 (Tex.App.—San Antonio 2000, pet. denied); *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex.App.—Austin 2000, no pet.). "A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action." *Rylander*, 23 S.W.3d at 135. "A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Ind. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). "[T]he plea should be decided without delving into the merits of the case." *Id.* "The purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached." *Id.* Evidence should be heard as necessary to determine the jurisdictional issue, but "the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction." *Id.*

"Whether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion." *Id.*

**TEXAS HEALTH & SAFETY CODE CHAPTER 752**

■ Absent prior notice to the operator of a high voltage overhead line, chapter 752 of the Texas Health and Safety Code ("Code") prohibits the following activities:

(1) performing a function that may place a person or any part of a tool, equipment, machine or material within six feet of a high voltage overhead line;

(2) installing a structure, installing or operating a tool, machine, or equipment, or handling supplies or materials within six feet of a high voltage overhead line; and

(3) operating a machine capable of vertical, lateral, or swinging motion within 10 feet of a high voltage overhead line.

TEX. HEALTH & SAFETY CODE ANN. §§ 752.004–752.006 (Vernon 1992 & Supp. 2001). Section 752.008 of the Code provides that if a violation of chapter 752 results in physical contact with a high voltage overhead line, "the person, firm, corporation, or association that committed the violation is liable to the owner or operator of the line for all damages to the facilities and for all liability that the owner or operator incurs as a result of the contact." TEX. HEALTH & SAFETY CODE ANN. § 752.008 (Vernon 1992). The parties disagree as to whether chapter 752 waives TxDOT's immunity.

■ "The waiver of governmental immunity is a matter addressed to the Legislature." *City of LaPorte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995). "It is a well-established rule that for the Legislature to waive the State's sovereign immunity, it must do so by clear and unambiguous language." *Id.*

TxDOT contends that it is not a "person" subject to section 752.008. FELPS argues that the Code Construction Act defines person to include a governmental subdivision or agency. TxDOT counters that the Code Construction Act definition should not be applied for two reasons: (1) section 752.008 was a codification of article 1436c of the civil statutes and the codification was to be without substantive change; and (2) inserting the Code Construction Act's definition of "person" in section 752.008 creates a redundancy, revealing that the term "person" as used in section 752.008 was intended to reference a natural person.

The Texas Health and Safety Code ("Code") was enacted as part of the state's continuing statutory revision program. TEX. HEALTH & SAFETY CODE ANN. § 1.001(a) (Vernon 1992). "The program contemplates a topic-by-topic revision of the state's general and permanent statute law without substantive change." *Id.*

FELPS notes that section 1.002 of the Code provides, "Chapter 311, Government Code (Code Construction Act), applies to the construction of each provision of this code except as otherwise expressly provided by this code." TEX. HEALTH & SAFETY CODE ANN. § 1.002 (Vernon 1992). Section 311.005(2) of the Code Construction Act defines "person" to include "government or governmental subdivision or agency...." TEX. GOV'T CODE ANN. § 311.005(2) (Vernon 1998).

TxDOT counters that the Code Construction Act's definition of "person" cannot be applied because the application of that definition would be a substantive change in the law. TxDOT asserts that applying the Code Construction Act's definition of person would result in a waiver of

governmental immunity that did not exist under article 1436c prior to codification. *See City of LaPorte v. Barfield,* 898 S.W.2d 288, 294 (Tex.1995) (refusing to apply Code Construction Act's definition of "person" to find a waiver of governmental immunity because such application would result in a substantive change). In support of this contention, TxDOT cites a 1989 attorney general's opinion that concludes that a county is not a "person, firm, corporation, or association" within the meaning of article 1436c. Op. Tex. Att'y Gen. No. JM–1062 (1989).

The attorney general's opinion relies on a 1942 Texas Supreme Court case, holding that a municipality was not liable under an earlier version of article 1436c because the statute was penal in nature and "if the Legislature had intended to visit such severe penalties on municipalities, it would have used more apt language to describe them." *See id.* (quoting *State v. Central Power & Light Co.,* 139 Tex. 51, 161 S.W.2d 766, 767 (1942)). The attorney general's opinion also rejects the definition of the term "person" in the Code Construction Act because the Code Construction Act does not apply to the construction of civil statutes. *See id.* Finally, the attorney general's opinion rejects the argument that counties are included in the term "person" because one section of article 1436c specifically exempted actions taken by authorized persons, which was defined to include employees of state and county or municipal agencies. *See id.*

The opinion states, "We do not think that this exemption of certain county employees implies that counties, even though not specifically exempted, are liable under the statute." *Id.* Since article 1436c only applies to a "person, firm, corporation, or association," and the attorney general could discern no legislative intent that such liability extend to counties, the opinion concludes that a county is not a "person, firm, corporation, or association" within the meaning of article 1436c. *Id.*

FELPS counters that article 1436c had been interpreted to waive governmental immunity prior to its codification; therefore, applying the Code Construction Act's definition of "person" would not be a substantive change. FELPS relies on a 1995 opinion from the Beaumont court of appeals to support this contention. *See Gulf States Utils. Co. v. County of Chambers,* 911 S.W.2d 888 (Tex.App.—Beaumont 1995, writ denied). In reaching its holding, the Beaumont court relied on the exemption that the attorney general's opinion had rejected.[1] The court concluded:

[I]t has been held that an exception makes plain the intent that a statute should apply in all cases not excepted. The statute exempts from its application certain county employees involved in certain activities that are not involved in this case. Inasmuch as the exemption of certain county employees makes plain the legislature's intention that the statute is meant to apply to county employ-

---

1.  The exemption states:
    (a) This chapter does not apply to the construction, reconstruction, operation, or maintenance by an authorized person of overhead electrical or communication circuits or conductors and their supporting structures and associated equipment that are part of a rail transportation system, an electrical generating, transmission, or distribution system, or a communication system.

    (b) In this section, "authorized person" means: ... "(4) an employee of a state, county, or municipal agency that has authorized circuit construction on the poles or structures that belong to an electric power company, an electric cooperative, a municipal or transportation system, or a communication system...."
    Tex. Health & Safety Code Ann. § 752.002 (Vernon 1992).

ees in those cases not exempted, we conclude that the statute is not ambiguous with respect to its application to counties.

*Id.* at 890 (citations omitted).

Although the Beaumont court was interpreting article 1436c, its interpretation was subsequent to the codification of article 1436c. Acts 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 3165 (codification effective September 1, 1989). The only interpretation of article 1436c with regard to immunity that preceded the codification, and the only law in existence before the codification, was the attorney general's opinion that concluded governmental immunity was not waived.

As noted in the Beaumont opinion, other courts have considered whether a governmental subdivision or agency is included in the phrase "person, firm, or corporation" as used in other statutory provisions, and most courts have concluded a governmental subdivision or agency is not included. *See Gulf States Utils. Co.,* 911 S.W.2d at 889–90. In *City of Corpus Christi v. Atlantic Mills Servicing Corp.,* this court considered whether the City of Corpus Christi should be considered a "person" entitled to seek an injunction to abate a public nuisance. 368 S.W.2d 640, 641 (Tex. Civ.App.—San Antonio 1963, writ ref'd n.r.e.). In holding that the City of Corpus Christi was included in the term "person," this court noted:

> The Penal Code provides that whenever any property or interest is intended to be protected and the term "person" is used to designate the party whose property it is intended to protect, the terms includes the property of the State and of all public or private corporations. Art. 22, V.A.P.C. On the other hand, if the use of the term "person" identifies the party against whom a violation is charged, it is strictly construed. *State*

*v. Central Power & Light Co.,* 139 Tex. 51, 161 S.W.2d 766; *Stanley v. State,* 145 Tex.Crim. 32, 165 S.W.2d 456 (Tex. Crim.App.1942).

*Id.* at 642. Because the statutory provision at issue in that case related to the party whose interest was to be protected, this court held that the term "person" included the City of Corpus Christi. *Id.* However, in section 752.008, the term "person" identifies the person to be held responsible for failing to notify FELPS. Under the reasoning in *City of Corpus Christi v. Atlantic Mills Servicing Corp.,* the term "person" should be strictly construed, especially considering the possibility that criminal penalties can be imposed against such a "person" under section 752.007.

FELPS counters that the existence of criminal penalties does not detract from its argument given that it is asserting a civil claim and in light of the legislative intent behind chapter 752. However, in codifying article 1436c, the Legislature demonstrated no clear intent to modify or revise existing interpretation of article 1436c. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 867 (Tex. 1999) (asserting "[o]nly truly extraordinary circumstances showing unmistakable legislative intent should divert us from enforcing the statute as written"). Furthermore, although FELPS's claim was civil in nature, the existence of criminal penalties is a consideration to be used in interpreting the term "person" as used in chapter 752. *See State v. Central Power & Light Co.,* 161 S.W.2d at 767; *City of Corpus Christi v. Atlantic Mills Servicing Corp.,* 368 S.W.2d at 642.

Assuming that the term "person" in article 1436c did not include a governmental subdivision or agency, FELPS argues that the prior interpretation cannot be used to alter or disregard the express terms of the

Code when its meaning is clear. FELPS relies on *Fleming Foods of Tex., Inc. v. Rylander,* 6 S.W.3d 278 (Tex.1999), to support this argument. However, in *Rylander,* the Texas Supreme Court held that the codification must be given effect over the prior statute only if the "specific provisions of a 'nonsubstantive' codification and the code as a whole are direct, unambiguous, and cannot be reconciled with the prior law." 6 S.W.3d at 286. In this case, the prior law and the codification are easily reconciled by refusing to apply the Code Construction Act's definition of "person" as the Texas Supreme Court did in *City of LaPorte v. Barfield,* 898 S.W.2d at 294.

In addition, FELPS's reliance on *Rylander* to support its argument that the Legislature intended to waive immunity by using the term "person" in the Code is seriously questionable in view of the Legislature's recent effort to amend the Government Code through its passage of H.B. 2809. *See* Tex. H.B. 2809, 77th Leg., R.S. (2001). H.B. 2809 states that the decision in *Rylander* was "inconsistent with the clear and repeatedly expressed intent of the legislature in the enactment of the Tax Code and other nonsubstantive codes enacted under the state's continuing statutory revision program." *Id.* H.B. 2809 would have added section 311.034 to the Government Code to read as follows:

> Sec. 311.034. Waiver of Sovereign Immunity. A statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. In a statute, the use of "person," as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction.

*Id.* In this case, the use of the term "person" in the Code can reasonably be con-

strued to be limited to natural persons; therefore, the context of the statute indicates a reasonable construction that does not result in a waiver of sovereign immunity. Although H.B. 2809 was vetoed by the governor, the governor's veto does not detract from the Legislature's effort to clarify the law as we have interpreted it. *See Brown v. Owens,* 674 S.W.2d 748, 750 (Tex. 1984) (noting legislative intent reflected in passage of bill despite veto).

Furthermore, as TxDOT notes, using the Code Construction Act's definition of "person" creates a redundancy. The Code Construction Act defines "person" to include "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." TEX. GOV'T CODE ANN. § 311.005(2) (Vernon 1992). If the Legislature had intended for the term "person" as used in chapter 752 to include all of the entities defined in section 311.005(2), it would have replaced the phrase "person, firm, corporation, or association" with the term "person" in the codified version because the term "person" would have included "firm, corporation, or association," when the Code Construction Act's definition of "person" was applied. In *Rylander,* the Legislature changed the language in codifying the statute. 6 S.W.3d at 280–281. In this case, the Legislature did not modify the language, and applying the Code Construction Act's definition of "person" creates a redundancy that the Legislature could have clarified by revising the language if that was the legislature's intent.

Finally, FELPS asserts that a proposed bill to amend section 752.008 demonstrates legislative intent that governmental immunity is currently waived under chapter 752. In 1999, a legislative bill was introduced to the Texas Senate to amend section 752.008 to expressly state, "This section does not

affect the immunity from suit or liability of the state or a political subdivision of the state, and an owner or operator of a high voltage overhead line may not recover damages under this section from the state or any political subdivision of the state." The bill was left pending in committee after testimony had been taken. Although the bill analysis reflects the author's belief that liability existed under chapter 752, the testimony in committee may have revealed that no such liability existed, which may have been the reason the bill did not pass. Inaction on a proposed amendment is a "dubious foundation" for inferring legislative intent, and, for this reason, "we attach no controlling significance to the Legislature's failure to enact the proposed amendment" *Texas Employment Comm'n v. Holberg*, 440 S.W.2d 38, 41–42 (Tex.1969).

Based on the law interpreting article 1436c prior to codification and the language contained in chapter 752, we hold that governmental immunity is not waived under chapter 752.

### TEXAS TORT CLAIMS ACT

■■■ TxDOT, as a state agency, is immune from suit unless that immunity is waived. *See Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex.2000). The Texas Tort Claims Act ("TTCA") creates a limited waiver of sovereign immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). In order for immunity to be waived under the TTCA, the claim must arise under one of the three specific areas of liability for which immunity is waived, and the claim must not fall under one of the exceptions from waiver. *Medrano v. City of Pearsall*, 989 S.W.2d 141, 144 (Tex. App.—San Antonio 1999, no pet.). The three specific areas of liability for which immunity has been waived are: (1) injury caused by an employee's use of a motor-driven vehicle; (2) injury caused by a condition or use of tangible personal or real property; and (3) claims arising from premises defects. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997).

■■■ In response to TxDOT's plea to the jurisdiction, FELPS asserted that two of these areas of liability were present under the facts in this case. First, FELPS asserted that the injury was caused by an employee's use of a motor-driven vehicle because Neil's death resulted from the use of a pickup truck and an independent motor-driven hoist. Second, FELPS asserted that Neil's death was caused by a condition or use of tangible personal or real property, namely TxDOT's traffic control poles. FELPS contended that TxDOT retained sufficient control over Neil to impose liability even though Neil was the employee of PES, an independent contractor.

In its brief, TxDOT globally contends that the TTCA does not waive immunity to provide an independent basis for immunity. TxDOT appears to be contending that even if Neil could have sued TxDOT because the claim was for an area of liability for which immunity was waived, that waiver does not extend to a claim of indemnity by FELPS.

Whether immunity has been waived with respect to FELPS's claim must be analyzed by considering the nature of FELPS's claim, not the claim brought by Neil against FELPS. FELPS's claim seeks indemnification under section 752.008 of the Texas Health and Safety Code based on TxDOT's failure to notify FELPS before Neil began work on the TxDOT pole. Therefore, the basis of FELPS's claim is TxDOT's failure to notify FELPS, which does not involve the condition or use of tangible or real personal property or the operation or use of a motor-driven vehicle. Furthermore, FELPS is seeking to be indemnified for

money it paid to settle claims made by Neil's beneficiary. However, section 101.021 only makes a governmental until liable for "property damage, personal injury, and death." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). Financial losses are not property damages or personal injury damages. *See Hencerling v. Texas A & M University*, 986 S.W.2d 373, 375 (Tex.App.—Houston [1st Dist.] 1999, pet. denied).

■ Even if the indemnity claim is reviewed based on the nature of the claim asserted by Neil against FELPS, there is no waiver. First, TxDOT's traffic signal poles did no more than furnish the condition that made the injury possible. *Dallas Co. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998). Second, no TxDOT employee was involved in the operation or use of the bucket truck. Neil's complaint was that TxDOT's inspector failed to properly supervise the job site and order PES's employees not to engage in work that placed them in too close a proximity to the power line. The crux of this complaint is TxDOT's failure to properly supervise the employees, which does not amount to the negligent use or misuse of motor-driven equipment. *See Ransom v. Center for Health Care Servs.*, 2 S.W.3d 643, 645 (Tex.App.—San Antonio 1999, pet. denied).

Immunity was not waived under the Texas Tort Claims Act.

## TEXAS CIVIL PRACTICE & REMEDIES CODE CHAPTER 32

■ In its brief, TxDOT also makes the assertion that FELPS cannot pursue an indemnity claim under section 32.002 of the Texas Civil Practice and Remedies Code because it only allows indemnification by a person against whom a judgment is rendered. The law supports this position. *See* TEX. CIV. PRAC. & REM.CODE ANN.

§ 32.002 (Vernon 1997); *see also Int'l Proteins Corp. v. Ralston-Purina Co.*, 744 S.W.2d 932, 934 (Tex.1988); *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 21 (Tex. 1987); *Trussway, Inc. v. Wetzel*, 928 S.W.2d 174, 178 (Tex.App.—Beaumont 1996, writ denied).

## JOINT ENTERPRISE

■ FELPS also alleged that TxDOT was required to indemnify it because a joint enterprise existed between TxDOT and PES pursuant to their written contract. In its brief, TxDOT contends that the contractual relationship between PES and TxDOT did not amount to a joint enterprise. FELPS does not respond to this argument in its brief.

In *Texas Dep't of Transp. v. Able*, the Texas Supreme Court held that "a governmental unit that enters into a joint enterprise can be liable under the waiver of sovereign immunity found in the Tort Claims Act." 35 S.W.3d 608, 610 (Tex. 2000). In that case, the plaintiffs alleged a premises defect involving a state highway. *See id.* at 612. The plaintiffs also alleged that a joint enterprise existed between TxDOT and the Houston Metropolitan Transit Authority ("Metro") with respect to the highway. *See id.* at 610. As a party to a joint enterprise with Metro, the plaintiffs contended TxDOT was equally responsible for the premises defect. *See id.* at 613.

■ Four elements must be shown to prove the existence of a joint enterprise: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Id.* TxDOT asserts that it was not engaged in a joint enter-

prise with PES because there was no community of pecuniary interest and no equal right of control.

In *Able*, the Texas Supreme Court relied upon evidence that the state highway had been a joint effort between Metro and TxDOT using federal, state, and local funds. *See id.* at 614. The project involved substantial sums of money and contemplated a sharing of resources in order to make better use of the money. *See id.* The evidence demonstrated a substantial economic gain from the pooling of resources through monetary and personnel savings. *See id.*

In the instant case, TxDOT hired PES to perform maintenance on its traffic signal poles. PES was paid by the number of poles it completed. There was no pooling of resources or pooling of efforts. TxDOT simply hired PES to perform work as an independent contractor. Therefore, there was no community of pecuniary interest such as to give rise to a joint enterprise.

CONCLUSION

The trial court's order is reversed, and the underlying lawsuit is dismissed for lack of jurisdiction.