**Ronnie HINKLE and Alice Hinkle, on Behalf of and as Guardians for Brianna Bagwell, et al., Appellants,**

v.

**Dr. John ADAMS, et al., Appellees.**

No. 06–00–00164–CV.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 31, 2002.

Decided April 19, 2002.

Rex A. Nichols Jr., Nichols & Nichols, PC, Longview, for appellant.

E. Glenn Thames Jr., Potter Minton, PC, Tyler, Michael C. Smith, The Roth Law Firm, Marshall, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Ronnie Hinkle and Alice Hinkle, on behalf of and as guardians for Brianna Bagwell, Ashley Heashe, individually and as representative of the estate of Elizabeth Bagwell, deceased, Onise Sanders and Jasper Sanders (known hereinafter collectively as Hinkle) appeal the trial court's granting of no-evidence motions for summary judgment filed by John Adams, M.D., and Med Tex Minor Medical Center, Inc. and Roxanna Cox.

Hinkle filed suit against Adams, individually and d/b/a Med Tex Minor Medical Center, Inc., Med Tex Minor Medical Center, Inc., and Roxanna Cox (Appellees) for negligence resulting in the death of Elizabeth Bagwell. Hinkle asserted twenty ways in which the Appellees were negligent, including the failure of Adams to implement policies and procedures that would allow the staff to question the physicians or call an ambulance at their own discretion. Hinkle alleged Cox is an employee of Adams or Med Tex, making Adams or Med Tex liable for Cox's actions. Hinkle also alleged Adams and/or Med Tex were engaged in a joint enterprise with Joseph Hance, M.D., and Interim Physicians, Inc. Finally, Hinkle alleged Adams is the alter ego of Med Tex.

Though Med Tex and Cox filed a joint no-evidence motion for summary judgment and Adams filed a separate no-evidence motion for summary judgment, the trial court rendered one judgment granting summary judgment as to all Appellees and disposing of all Hinkle's claims.

Hinkle appeals the granting of summary judgment to Adams. Hinkle first contends the trial court erred in granting summary judgment to Adams because summary judgment evidence established material and genuine factual issues as to whether Adams was negligent in failing to implement any policy or procedure which would have prevented Elizabeth Bagwell's death.

Second, Hinkle contends the trial court erred in granting Adams' motion for summary judgment because there is sufficient evidence to survive summary judgment as to whether Cox was an employee of Adams, thereby making Adams liable for Cox's actions. Hinkle next contends the trial court erred in granting summary judgment for Adams because summary judgment evidence established material and genuine factual issues as to whether Adams was engaged in a joint enterprise with Interim Physicians. Finally, Hinkle contends the trial court improperly granted Adams' motion for summary judgment because summary judgment evidence created material and genuine issues of fact as to whether Adams and Med Tex were alter egos of one another.

With regard to Cox, Hinkle contends the trial court erred in granting her motion for summary judgment because summary judgment evidence created material and genuine issues of fact as to whether Cox's actions were the proximate cause of Bagwell's death.

With regard to Med Tex, Hinkle contends summary judgment evidence created material and genuine issues of fact sufficient to survive summary judgment as to whether Cox was Med Tex's employee, thereby making Med Tex liable for Cox's actions, and that summary judgment evidence created material and genuine issues of fact as to whether Med Tex and Interim Physicians were engaged in a joint enterprise.

Med Tex is an incorporated medical clinic with two shareholders and two officers, Adams and his wife. Adams treats patients at the clinic under a service agreement. When Adams is unavailable, Med Tex staffs the clinic with *locum tenens* physicians provided by Interim Physicians. At the time of Bagwell's death, Med Tex employed a small staff, including a licensed vocational nurse, Paula Whittington, and a certified medical assistant, Cox.

On November 4, 1997, Bagwell visited Med Tex and Adams treated her back pain by prescribing Ultram and Naprelan. On the morning of November 5, 1997, Bagwell called Med Tex and told Cox her heart rate had become rapid during the night, but she was feeling better that morning. Adams was gone for the day, and the *locum tenens* physician had not yet arrived. Cox advised Bagwell to take another Naprelan, and then, if her symptoms did not recur, to take the Ultram at lunch. Shortly thereafter, Joseph Hance, M.D., the *locum tenens* physician, arrived and Cox told him of the advice she gave Bagwell.

Around three that afternoon, Bagwell came into the office complaining of a rapid heart rate and other ailments. She was seen by Hance and was given an EKG and some medications. As Hance was about to leave, Whittington, the nurse, reminded him Bagwell was still at the facility. Hance told Whittington that Bagwell would be all right and to send her home. Whittington escorted Bagwell to the car and recommended she go straight to the emergency room. Early in the morning of November 6, 1997, Bagwell was taken to the emergency room. She died in the hospital on November 7.

The Appellees all filed no-evidence motions for summary judgment under TEX.R. CIV. P. 166a(i). Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex. App.-Austin 1998, no pet.). Therefore, our task as an appellate court is to ascertain whether the nonmovant produced any evidence of probative force to raise a fact

issue on the material questions presented. *Id.* We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Jackson,* 979 S.W.2d at 70–71. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner,* 953 S.W.2d at 711.

■ We first address whether the trial court properly granted summary judgment as to Adams. Hinkle first contends summary judgment was not proper because the court granted it on a ground not asserted by Adams. A no-evidence summary judgment may not be granted on grounds not expressly presented to the trial court. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 339–42 (Tex.1993). Hinkle contends Adams failed to request summary judgment on the claim he was negligent by failing to implement policies and procedures. A review of the record shows Adams moved for summary judgment on this ground.

Hinkle claims Adams was negligent by failing to provide proper policies and procedures regarding telephone triage and proper policies and procedures allowing the staff to question the physician and/or call for emergency assistance. Hinkle contends the trial court erred in finding that Adams owed no duty to create such policies and procedures. Under Rule 166a(i), the movant must state the elements as to which there is no evidence. The court must grant the motion unless the nonmovant produces summary judgment evidence

raising a genuine issue of material fact. Tex.R. Civ. P. 166a(i). Adams moved for summary judgment, alleging there was no evidence as to each element of negligence: duty, breach, causation, and damages. Summary judgment was properly granted as to Adams if Hinkle failed to produce evidence as to one of these elements.

■ Hinkle contends Adams, rather than Med Tex, had a duty to implement these policies because Med Tex had lost its corporate status and was being operated as a sole proprietorship. Therefore, we first consider the corporate status of Med Tex.

■ In 1995, Med Tex failed to pay its corporate franchise tax, resulting in the forfeiture of its corporate privileges by the comptroller and, on August 24, 1995, the forfeiture of its corporate charter by the secretary of state. *See* Tex. Tax Code Ann. § 171.251 (Vernon 2002); Tex. Tax Code Ann. § 171.309 (Vernon 2002). But, a corporation whose charter is forfeited under these provisions is entitled to have its charter and corporate privileges revived if the corporation pays the tax, penalty, and interest imposed by this chapter and due at the time the request is made to set aside the forfeiture under Section 171.313. Tex. Tax Code Ann. § 171.312 (Vernon 2002); *see* Tex. Tax Code Ann. § 171.313 (Vernon 2002). On October 26, 2000, the secretary of state reinstated Med Tex's corporate charter. Neither the forfeiture of corporate privileges by the comptroller nor the forfeiture of a corporation's charter by the secretary of state extinguishes the corporation as an entity. *Lighthouse Church of Cloverleaf v. Tex. Bank,* 889 S.W.2d 595, 601 (Tex.App.-Houston [14th Dist.] 1994, writ denied); *see In re ABZ Ins. Servs.,* 245 B.R. 255, 258 (2000). Further, if a corporation files its delinquent reports and pays its delinquent franchise taxes, its corporate privileges and charter

are retroactively reinstated. *Mello v. A.M.F. Inc.*, 7 S.W.3d 329, 331 (Tex.App.-Beaumont 1999, pet. denied). Because Med Tex reinstated its charter, it is as though the forfeiture never existed. The corporation existed at the time of Bagwell's visit. Therefore, Adams was an officer of the corporation, not a sole proprietor.

■ We now turn to Hinkle's contention that Adams and Med Tex are alter egos. Although Hinkle's brief failed to cite any authority under this issue and the issue was therefore improperly briefed, *see* Tex. R.App. P. 38.1(h), we will nevertheless address the issue in the interest of justice.

■ Alter ego is a basis for disregarding the corporate fiction where a corporation is organized and operated as a mere tool or business conduit of another individual. *See Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986). It applies "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Id.*, citing *First Nat'l Bank in Canyon v. Gamble*, 134 Tex. 112, 132 S.W.2d 100, 103 (1939). Alter ego "is shown from the total dealings of the corporation and the individual, including the degree to which ... corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Castleberry*, 721 S.W.2d at 272; *Hall v. Timmons*, 987 S.W.2d 248, 250 (Tex.App.-Beaumont 1999, no pet.). Failure to comply with corporate formalities is no longer a factor in considering whether alter ego exists. Tex. Bus. Corp. Act Ann. art. 2.21, § A(3) (Vernon Supp.2002); *Aluminum Chems. v. Bechtel Corp.*, 28 S.W.3d 64, 67 (Tex.App.-Texarkana 2000, no pet.).

■ Hinkle contends the evidence sufficiently proves alter ego in four ways: (1) failure to comply with corporate formalities; (2) failure to routinely use "Inc." after the corporate name; (3) failure to pay the corporate franchise tax, resulting in forfeiture of the corporate charter; and (4) an employee thought Adams was her employer. The second of these four is included in the first. Failure to routinely use "Inc." after the corporate name is failure to comply with a corporate formality. Under *Castleberry*, this was a factor to be considered in determining alter ego. However, Article 2.21, § A(3) of the Texas Business Corporation Act specifically removes it as a factor for consideration in proving alter ego. Neither of the other remaining ways on which Hinkle relies proves alter ego. Although Med Tex did fail to pay its franchise tax and lost its corporate charter, by properly complying with the Tax Code, its corporate charter was reinstated and retroactively revived the corporation. This is not evidence of alter ego. Finally, contrary to Hinkle's contention, the fact that Whittington, who is not a party to this suit, believed she was an employee of Adams, not Med Tex, is no evidence of alter ego. Further, there is no evidence of self-dealing or mixing of funds on the part of Adams and Med Tex. In fact, all of Cox's payroll receipts that are in the record are from Med Tex. Hinkle failed to produce evidence of alter ego, and we therefore affirm the trial court's judgment on this issue.

■ Under the general rule, unless alter ego is established, corporate officers and agents are subject to personal liability for their actions within the employment context only when they breach an independent duty of care. *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex.1996). As an officer of a corporation, Adams is immune from

liability due to the negligent acts of the corporation unless he owed an independent duty. There is no evidence to show Adams owed an independent duty to create policies or procedures regarding telephone triage, allowing the staff to question the actions of the physicians, or to call emergency assistance. We find the trial court properly adjudged that Adams owed no duty.

We address the issue below under our discussion of Cox as to whether there is sufficient summary judgment evidence to raise a question as to Cox's employer.

■■■■ Finally, Hinkle contends there was sufficient evidence to raise a genuine question as to whether there was a joint enterprise between Adams and Interim Physicians. There is no evidence that Adams, acting separately from his duties as an officer of the corporation, entered into any agreement with Interim Physicians. Four elements are required to show joint enterprise: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose among the members; and (4) an equal right to voice in the direction of the enterprise, which gives an equal right to control. *Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608, 613 (Tex.2000); *Tex. Dep't of Transp. v. City of Floresville Elec. Power & Light Sys.,* 53 S.W.3d 447, 456 (Tex.App.-San Antonio 2001, no pet.). There is no evidence of an agreement between Adams and Interim Physicians. The contract providing a *locum tenens* physician was signed by Rebecca Adams in her capacity as secretary and treasurer of Med Tex. The trial court properly granted summary judgment for Adams on the claim of joint enterprise.

■■■ We now turn to the claims against Cox. Hinkle contends the trial court erred in granting summary judgment as to Cox because there was sufficient evidence to raise a genuine issue of fact as to Cox's negligence. Hinkle's sole contention is that there is sufficient evidence to show Cox's actions were the proximate cause of Bagwell's death. However, the lack of evidence on proximate cause was not the basis on which the trial court granted summary judgment as to Cox. The trial court specifically stated summary judgment was granted as to Cox because Hinkle provided no evidence Cox breached the accepted standard of care. This specific basis on which Cox was granted summary judgment was not challenged by Hinkle in their brief before this Court. Hinkle did argue, during oral argument, there is some evidence Cox breached the accepted standard of care, but we will not consider this argument since it was not included in Hinkle's original appellate brief. All waivable errors not included in the original appellate brief are waived and present nothing to review. Tex.R.App. P. 38.1(e); *see Pat Baker Co. v. Wilson,* 971 S.W.2d 447, 450 (Tex.1998); *Allright, Inc. v. Pearson,* 735 S.W.2d 240 (Tex.1987). We affirm the trial court's granting of Cox's motion for summary judgment.

Because we affirm the trial court's granting of summary judgment as to Cox, we need not determine if a genuine issue of fact exists as to Cox's employer.

■■■ With regard to Med Tex, Hinkle contends there is sufficient summary judgment evidence to establish genuine issues of fact as to whether a joint enterprise existed between Med Tex and Interim Physicians. We do not have to consider whether summary judgment was properly granted for Med Tex regarding any duty it may have had to implement triage and emergency policies and procedures, because that issue was not raised on appeal.

If a joint enterprise exists between Med Tex and Interim Physicians, then Med Tex can be liable for the negligence of Hance and Interim Physicians. Hinkle contends the trial court erred in finding Hance was an independent contractor with exclusive authority to make medical judgments regarding Bagwell's treatment. As stated above, there are four elements required to show joint enterprise: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose among the members; and (4) an equal right to voice in the direction of the enterprise, which gives an equal right to control. *Able*, 35 S.W.3d at 613; *City of Floresville Elec. Power & Light Sys.*, 53 S.W.3d at 456.

In order to establish a joint enterprise and thereby find Med Tex vicariously liable for the actions of Hance, Hinkle must set forth sufficient evidence of a community of pecuniary interest. Hinkle contends because Interim Physicians received $600.00 a day for Hance's services and Med Tex billed for Bagwell's treatment, this is sufficient to show a community of pecuniary interest. We disagree and find there is no evidence of a community of pecuniary interest.

The contract between Med Tex and Interim Physicians provided for the services of a doctor to Med Tex for a two-day period at a set rate, with the doctor acting as an independent contractor. Interim Physicians was paid by the day, and there was no pooling of resources or pooling of efforts. Med Tex simply hired Interim Physicians to perform work as an independent contractor. Therefore, there was no community of pecuniary interest giving rise to a joint enterprise. *See City of Floresville Elec. Power & Light Sys.*, 53 S.W.3d at 457. There was no evidence of sharing financial benefit, or of sharing or pooling of resources or efforts between Med Tex and Interim Physicians. *See Blackburn v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, 58 S.W.3d 263, 272–73 (Tex.App.-Fort Worth 2001, no pet.). Hinkle's contentions are overruled.

We affirm the judgment.

## Concurring Opinion by Justice GRANT.

GRANT, Justice, concurring.

Roxanna Cox wore a nurse's uniform and had a name tag identifying her as a "C.M.A." This meant that she was a certified medical assistant, and, according to her testimony, the job of a certified medical assistant was to assist the office doctors in any procedure. She was not licensed by the State of Texas, but had a certification from the American Medical Association based upon a test she had taken after studying the books and tapes provided by the American Medical Association. She testified that she had no training or education in pharmacology, which she explained meant "dispensing medication."

The summary judgment rendered in this case cites that one of the bases for granting was the Hinkles' failure to provide proof of the standard of care for Roxanna Cox.

With some exceptions, testimony is required to establish the standard of care for professional persons and those who undertake any work calling for special skills. *See* Prosser & Keeton on The Law of Torts, § 32, p. 185 (5th ed.1984).

In the present case, Cox admits that she had no training or education in the field of pharmacology. It is difficult to determine a standard of care for a person undertaking to give medical advice on the taking of medications, a field in which she has no training or license. Such a requirement

would entail testimony to the effect that she did not use ordinary care in applying a learning and skill which she did not possess. At most, the standard of care applied to her would have been what a person of reasonable prudence would have done under the same or similar circumstances. The reasonably prudent person rule does not require testimony by experts, but is rather a matter for the fact-finder at trial.

Although counsel at oral argument contended strongly that the trial court erred in rendering a summary judgment based upon there being no showing of the proper standard of care for Cox and the violation thereof, no point of error or argument on this matter is presented by Hinkles' brief.

Therefore, I must concur with the majority opinion.