In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00164-CV


______________________________




RONNIE HINKLE AND ALICE HINKLE,


ON BEHALF OF AND AS GUARDIANS FOR


BRIANNA BAGWELL, ET AL., Appellants



V.



DR. JOHN ADAMS, ET AL., Appellees




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 98-0696




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross


Concurring Opinion by Justice Grant



O P I N I O N



 Ronnie Hinkle and Alice Hinkle, on behalf of and as guardians for Brianna Bagwell,
Ashley Heashe, individually and as representative of the estate of Elizabeth Bagwell,
deceased, Onise Sanders and Jasper Sanders (known hereinafter collectively as Hinkle)
appeal the trial court's granting of no-evidence motions for summary judgment filed by
John Adams, M.D., and Med Tex Minor Medical Center, Inc. and Roxanna Cox.

 Hinkle filed suit against Adams, individually and d/b/a Med Tex Minor Medical
Center, Inc., Med Tex Minor Medical Center, Inc., and Roxanna Cox (Appellees) for
negligence resulting in the death of Elizabeth Bagwell. Hinkle asserted twenty ways in
which the Appellees were negligent, including the failure of Adams to implement policies
and procedures that would allow the staff to question the physicians or call an ambulance
at their own discretion. Hinkle alleged Cox is an employee of Adams or Med Tex, making
Adams or Med Tex liable for Cox's actions. Hinkle also alleged Adams and/or Med Tex
were engaged in a joint enterprise with Joseph Hance, M.D., and Interim Physicians, Inc. 
Finally, Hinkle alleged Adams is the alter ego of Med Tex. 

 Though Med Tex and Cox filed a joint no-evidence motion for summary judgment
and Adams filed a separate no-evidence motion for summary judgment, the trial court
rendered one judgment granting summary judgment as to all Appellees and disposing of
all Hinkle's claims.

 Hinkle appeals the granting of summary judgment to Adams. Hinkle first contends
the trial court erred in granting summary judgment to Adams because summary judgment
evidence established material and genuine factual issues as to whether Adams was
negligent in failing to implement any policy or procedure which would have prevented
Elizabeth Bagwell's death. Second, Hinkle contends the trial court erred in granting
Adams' motion for summary judgment because there is sufficient evidence to survive
summary judgment as to whether Cox was an employee of Adams, thereby making Adams
liable for Cox's actions. Hinkle next contends the trial court erred in granting summary
judgment for Adams because summary judgment evidence established material and
genuine factual issues as to whether Adams was engaged in a joint enterprise with Interim
Physicians. Finally, Hinkle contends the trial court improperly granted Adams' motion for
summary judgment because summary judgment evidence created material and genuine
issues of fact as to whether Adams and Med Tex were alter egos of one another. 

 With regard to Cox, Hinkle contends the trial court erred in granting her motion for
summary judgment because summary judgment evidence created material and genuine
issues of fact as to whether Cox's actions were the proximate cause of Bagwell's death.

 With regard to Med Tex, Hinkle contends summary judgment evidence created
material and genuine issues of fact sufficient to survive summary judgment as to whether
Cox was Med Tex's employee, thereby making Med Tex liable for Cox's actions, and that
summary judgment evidence created material and genuine issues of fact as to whether
Med Tex and Interim Physicians were engaged in a joint enterprise.

 Med Tex is an incorporated medical clinic with two shareholders and two officers,
Adams and his wife. Adams treats patients at the clinic under a service agreement. When
Adams is unavailable, Med Tex staffs the clinic with locum tenens physicians provided by
Interim Physicians. At the time of Bagwell's death, Med Tex employed a small staff,
including a licensed vocational nurse, Paula Whittington, and a certified medical assistant,
Cox. 

 On November 4, 1997, Bagwell visited Med Tex and Adams treated her back pain
by prescribing Ultram and Naprelan. On the morning of November 5, 1997, Bagwell called
Med Tex and told Cox her heart rate had become rapid during the night, but she was
feeling better that morning. Adams was gone for the day, and the locum tenens physician
had not yet arrived. Cox advised Bagwell to take another Naprelan, and then, if her
symptoms did not recur, to take the Ultram at lunch. Shortly thereafter, Joseph Hance,
M.D., the locum tenens physician, arrived and Cox told him of the advice she gave
Bagwell. 

 Around three that afternoon, Bagwell came into the office complaining of a rapid
heart rate and other ailments. She was seen by Hance and was given an EKG and some
medications. As Hance was about to leave, Whittington, the nurse, reminded him Bagwell
was still at the facility. Hance told Whittington that Bagwell would be all right and to send
her home. Whittington escorted Bagwell to the car and recommended she go straight to
the emergency room. Early in the morning of November 6, 1997, Bagwell was taken to the
emergency room. She died in the hospital on November 7.

 The Appellees all filed no-evidence motions for summary judgment under Tex. R.
Civ. P. 166a(i). Because a no-evidence summary judgment is essentially a pretrial directed
verdict, we apply the same legal sufficiency standard in reviewing a no-evidence summary
judgment as we apply in reviewing a directed verdict. Jackson v. Fiesta Mart, Inc., 979
S.W.2d 68, 70 (Tex. App.-Austin 1998, no pet.). Therefore, our task as an appellate court
is to ascertain whether the nonmovant produced any evidence of probative force to raise
a fact issue on the material questions presented. Id. We consider all the evidence in the
light most favorable to the party against whom the no-evidence summary judgment was
rendered, disregarding all contrary evidence and inferences. Merrell Dow Pharms., Inc.
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). A no-evidence summary judgment is
improperly granted if the nonmovant presents more than a scintilla of probative evidence
to raise a genuine issue of material fact. Jackson, 979 S.W.2d at 70-71. More than a
scintilla of evidence exists when the evidence "rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions." Havner, 953 S.W.2d at
711. 

 We first address whether the trial court properly granted summary judgment as to
Adams. Hinkle first contends summary judgment was not proper because the court 
granted it on a ground not asserted by Adams. A no-evidence summary judgment may not
be granted on grounds not expressly presented to the trial court. McConnell v. Southside
Indep. Sch. Dist., 858 S.W.2d 337, 339-42 (Tex. 1993). Hinkle contends Adams failed to
request summary judgment on the claim he was negligent by failing to implement policies
and procedures. A review of the record shows Adams moved for summary judgment on
this ground. 

 Hinkle claims Adams was negligent by failing to provide proper policies and
procedures regarding telephone triage and proper policies and procedures allowing the
staff to question the physician and/or call for emergency assistance. Hinkle contends the
trial court erred in finding that Adams owed no duty to create such policies and procedures. 
Under Rule 166a(i), the movant must state the elements as to which there is no evidence. 
The court must grant the motion unless the nonmovant produces summary judgment
evidence raising a genuine issue of material fact. Tex. R. Civ. P. 166a(i). Adams moved
for summary judgment, alleging there was no evidence as to each element of negligence:
duty, breach, causation, and damages. Summary judgment was properly granted as to
Adams if Hinkle failed to produce evidence as to one of these elements.

 Hinkle contends Adams, rather than Med Tex, had a duty to implement these
policies because Med Tex had lost its corporate status and was being operated as a sole
proprietorship. Therefore, we first consider the corporate status of Med Tex. 

 In 1995, Med Tex failed to pay its corporate franchise tax, resulting in the forfeiture
of its corporate privileges by the comptroller and, on August 24, 1995, the forfeiture of its
corporate charter by the secretary of state. See Tex. Tax Code Ann. § 171.251 (Vernon
2002); Tex. Tax Code Ann. § 171.309 (Vernon 2002). But, a corporation whose charter
is forfeited under these provisions is entitled to have its charter and corporate privileges
revived if the corporation pays the tax, penalty, and interest imposed by this chapter and
due at the time the request is made to set aside the forfeiture under Section 171.313. Tex.
Tax Code Ann. § 171.312 (Vernon 2002); see Tex. Tax Code Ann. § 171.313 (Vernon
2002). On October 26, 2000, the secretary of state reinstated Med Tex's corporate charter. 
Neither the forfeiture of corporate privileges by the comptroller nor the forfeiture of a
corporation's charter by the secretary of state extinguishes the corporation as an entity. 
Lighthouse Church of Cloverleaf v. Tex. Bank, 889 S.W.2d 595, 601 (Tex. App.-Houston
[14th Dist.] 1994, writ denied); see In re ABZ Ins. Servs., 245 B.R. 255, 258 (2000). 
Further, if a corporation files its delinquent reports and pays its delinquent franchise taxes,
its corporate privileges and charter are retroactively reinstated. Mello v. A.M.F. Inc., 7
S.W.3d 329, 331 (Tex. App.-Beaumont 1999, pet. denied). Because Med Tex reinstated
its charter, it is as though the forfeiture never existed. The corporation existed at the time
of Bagwell's visit. Therefore, Adams was an officer of the corporation, not a sole
proprietor. 

 We now turn to Hinkle's contention that Adams and Med Tex are alter egos. 
Although Hinkle's brief failed to cite any authority under this issue and the issue was
therefore improperly briefed, see Tex. R. App. P. 38.1(h), we will nevertheless address the
issue in the interest of justice. 

 Alter ego is a basis for disregarding the corporate fiction where a corporation is
organized and operated as a mere tool or business conduit of another individual. See
Castleberry v. Branscum, 721 S.W.2d 270, 272 (Tex. 1986). It applies "when there is such
unity between corporation and individual that the separateness of the corporation has
ceased and holding only the corporation liable would result in injustice." Id., citing First
Nat'l Bank in Canyon v. Gamble, 134 Tex. 112, 132 S.W.2d 100, 103 (1939). Alter ego "is
shown from the total dealings of the corporation and the individual, including the degree
to which . . . corporate and individual property have been kept separately, the amount of
financial interest, ownership and control the individual maintains over the corporation, and
whether the corporation has been used for personal purposes." Castleberry, 721 S.W.2d
at 272; Hall v. Timmons, 987 S.W.2d 248, 250 (Tex. App.-Beaumont 1999, no pet.). 
Failure to comply with corporate formalities is no longer a factor in considering whether
alter ego exists. Tex. Bus. Corp. Act Ann. art. 2.21, § A(3) (Vernon Supp. 2002);
Aluminum Chems. v. Bechtel Corp., 28 S.W.3d 64, 67 (Tex. App.-Texarkana 2000, no
pet.).

 Hinkle contends the evidence sufficiently proves alter ego in four ways: (1) failure
to comply with corporate formalities; (2) failure to routinely use "Inc." after the corporate
name; (3) failure to pay the corporate franchise tax, resulting in forfeiture of the corporate
charter; and (4) an employee thought Adams was her employer. The second of these four
is included in the first. Failure to routinely use "Inc." after the corporate name is failure to
comply with a corporate formality. Under Castleberry, this was a factor to be considered
in determining alter ego. However, Article 2.21, § A(3) of the Texas Business Corporation
Act specifically removes it as a factor for consideration in proving alter ego. Neither of the
other remaining ways on which Hinkle relies proves alter ego. Although Med Tex did fail
to pay its franchise tax and lost its corporate charter, by properly complying with the Tax
Code, its corporate charter was reinstated and retroactively revived the corporation. This
is not evidence of alter ego. Finally, contrary to Hinkle's contention, the fact that
Whittington, who is not a party to this suit, believed she was an employee of Adams, not
Med Tex, is no evidence of alter ego. Further, there is no evidence of self-dealing or
mixing of funds on the part of Adams and Med Tex. In fact, all of Cox's payroll receipts that
are in the record are from Med Tex. Hinkle failed to produce evidence of alter ego, and we
therefore affirm the trial court's judgment on this issue.

 Under the general rule, unless alter ego is established, corporate officers and
agents are subject to personal liability for their actions within the employment context only
when they breach an independent duty of care. Leitch v. Hornsby, 935 S.W.2d 114, 117
(Tex. 1996). As an officer of a corporation, Adams is immune from liability due to the
negligent acts of the corporation unless he owed an independent duty. There is no
evidence to show Adams owed an independent duty to create policies or procedures
regarding telephone triage, allowing the staff to question the actions of the physicians, or
to call emergency assistance. We find the trial court properly adjudged that Adams owed
no duty.

 We address the issue below under our discussion of Cox as to whether there is
sufficient summary judgment evidence to raise a question as to Cox's employer.

 Finally, Hinkle contends there was sufficient evidence to raise a genuine question
as to whether there was a joint enterprise between Adams and Interim Physicians. There
is no evidence that Adams, acting separately from his duties as an officer of the
corporation, entered into any agreement with Interim Physicians. Four elements are
required to show joint enterprise: (1) an agreement, express or implied, among the
members of the group; (2) a common purpose to be carried out by the group; (3) a
community of pecuniary interest in that purpose among the members; and (4) an equal
right to voice in the direction of the enterprise, which gives an equal right to control. Tex.
Dep't of Transp. v. Able, 35 S.W.3d 608, 613 (Tex. 2000); Tex. Dep't of Transp. v. City of
Floresville Elec. Power & Light Sys., 53 S.W.3d 447, 456 (Tex. App.-San Antonio 2001,
no pet.). There is no evidence of an agreement between Adams and Interim Physicians. 
The contract providing a locum tenens physician was signed by Rebecca Adams in her
capacity as secretary and treasurer of Med Tex. The trial court properly granted summary
judgment for Adams on the claim of joint enterprise.

 We now turn to the claims against Cox. Hinkle contends the trial court erred in
granting summary judgment as to Cox because there was sufficient evidence to raise a
genuine issue of fact as to Cox's negligence. Hinkle's sole contention is that there is
sufficient evidence to show Cox's actions were the proximate cause of Bagwell's death. 
However, the lack of evidence on proximate cause was not the basis on which the trial
court granted summary judgment as to Cox. The trial court specifically stated summary
judgment was granted as to Cox because Hinkle provided no evidence Cox breached the
accepted standard of care. This specific basis on which Cox was granted summary
judgment was not challenged by Hinkle in their brief before this Court. Hinkle did argue,
during oral argument, there is some evidence Cox breached the accepted standard of care,
but we will not consider this argument since it was not included in Hinkle's original
appellate brief. All waivable errors not included in the original appellate brief are waived
and present nothing to review. Tex. R. App. P. 38.1(e); see Pat Baker Co. v. Wilson, 971
S.W.2d 447, 450 (Tex. 1998); Allright, Inc. v. Pearson, 735 S.W.2d 240 (Tex. 1987). We
affirm the trial court's granting of Cox's motion for summary judgment.

 Because we affirm the trial court's granting of summary judgment as to Cox, we
need not determine if a genuine issue of fact exists as to Cox's employer.

 With regard to Med Tex, Hinkle contends there is sufficient summary judgment
evidence to establish genuine issues of fact as to whether a joint enterprise existed
between Med Tex and Interim Physicians. We do not have to consider whether summary
judgment was properly granted for Med Tex regarding any duty it may have had to
implement triage and emergency policies and procedures, because that issue was not
raised on appeal.

 If a joint enterprise exists between Med Tex and Interim Physicians, then Med Tex
can be liable for the negligence of Hance and Interim Physicians. Hinkle contends the trial
court erred in finding Hance was an independent contractor with exclusive authority to
make medical judgments regarding Bagwell's treatment. As stated above, there are four
elements required to show joint enterprise: (1) an agreement, express or implied, among
the members of the group; (2) a common purpose to be carried out by the group; (3) a
community of pecuniary interest in that purpose among the members; and (4) an equal
right to voice in the direction of the enterprise, which gives an equal right to control. Able,
35 S.W.3d at 613; City of Floresville Elec. Power & Light Sys., 53 S.W.3d at 456.

 In order to establish a joint enterprise and thereby find Med Tex vicariously liable
for the actions of Hance, Hinkle must set forth sufficient evidence of a community of
pecuniary interest. Hinkle contends because Interim Physicians received $600.00 a day
for Hance's services and Med Tex billed for Bagwell's treatment, this is sufficient to show
a community of pecuniary interest. We disagree and find there is no evidence of a
community of pecuniary interest.

 The contract between Med Tex and Interim Physicians provided for the services of
a doctor to Med Tex for a two-day period at a set rate, with the doctor acting as an
independent contractor. Interim Physicians was paid by the day, and there was no pooling
of resources or pooling of efforts. Med Tex simply hired Interim Physicians to perform work
as an independent contractor. Therefore, there was no community of pecuniary interest
giving rise to a joint enterprise. See City of Floresville Elec. Power & Light Sys., 53 S.W.3d
at 457. There was no evidence of sharing financial benefit, or of sharing or pooling of
resources or efforts between Med Tex and Interim Physicians. See Blackburn v. Columbia
Med. Ctr. of Arlington Subsidiary, L.P., 58 S.W.3d 263, 272-73 (Tex. App.-Fort Worth
2001, no pet.). Hinkle's contentions are overruled.

 We affirm the judgment.



 Donald R. Ross

 Justice

 



CONCURRING OPINION


 Roxanna Cox wore a nurse's uniform and had a name tag identifying her as a
"C.M.A." This meant that she was a certified medical assistant, and, according to her
testimony, the job of a certified medical assistant was to assist the office doctors in any
procedure. She was not licensed by the State of Texas, but had a certification from the
American Medical Association based upon a test she had taken after studying the books
and tapes provided by the American Medical Association. She testified that she had no
training or education in pharmacology, which she explained meant "dispensing
medication."

 The summary judgment rendered in this case cites that one of the bases for
granting was the Hinkles' failure to provide proof of the standard of care for Roxanna Cox.

 With some exceptions, testimony is required to establish the standard of care for
professional persons and those who undertake any work calling for special skills. See
Prosser & Keeton on The Law of Torts, § 32, p. 185 (5th ed. 1984).

 In the present case, Cox admits that she had no training or education in the field of
pharmacology. It is difficult to determine a standard of care for a person undertaking to
give medical advice on the taking of medications, a field in which she has no training or
license. Such a requirement would entail testimony to the effect that she did not use
ordinary care in applying a learning and skill which she did not possess. At most, the
standard of care applied to her would have been what a person of reasonable prudence
would have done under the same or similar circumstances. The reasonably prudent
person rule does not require testimony by experts, but is rather a matter for the fact-finder
at trial.

 Although counsel at oral argument contended strongly that the trial court erred in
rendering a summary judgment based upon there being no showing of the proper standard
of care for Cox and the violation thereof, no point of error or argument on this matter is
presented by Hinkles' brief.

 Therefore, I must concur with the majority opinion.



 Ben Z. Grant

 Justice


Date Submitted: January 31, 2002

Date Decided: April 19, 2002


Publish