NO. 12-02-00195-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


R. LYNWOOD SCOTT, JR.,
§
 APPEAL FROM THE THIRD

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


JOHN CHARLES MCKAY,

APPELLEE
§
 ANDERSON COUNTY, TEXAS






MEMORANDUM OPINION


 R. Lynwood Scott, Jr. ("Scott") appeals the trial court's take nothing judgment in his suit
against John Charles McKay ("McKay") to collect two promissory notes. In seven issues, Scott
contends the trial court erred. We affirm.


Factual and Procedural Background


 In the mid 1980s, Scott and McKay became friends while working at a radio station in
Orlando, Florida. In 1990, McKay hired Scott to work for him at two radio stations in Columbia,
South Carolina. The two became both shareholders and directors in a new corporation, Willow
Creek Entertainment, Inc. ("Willow Creek"), formed in 1994. McKay owned fifty-two percent of
the shares of Willow Creek, Scott owned four percent of the shares, and four other individuals
owned the remaining forty-four percent. In December 1994, Willow Creek purchased the radio
stations KNET-AM /KYYK-FM in Palestine, Texas from North Star Communications, Inc. ("North
Star"). (1) Willow Creek executed an $850,000 promissory note payable to North Star and secured by
the radio stations. That same month, McKay and Scott moved to Palestine to begin operating the
two radio stations.

 McKay was the general manager of the radio stations and directly handled their business
affairs. Scott directed the stations' technical operations. Within six months of their move to
Palestine, Scott and McKay recognized that Willow Creek was having financial difficulties. First,
they learned that the business manager they "inherited" from Runnels's organization had embezzled
funds. Secondly, there was not enough income generated to repay the $850,000 loan to North Star
for the purchase of the stations. However, through negotiations with Runnels, Willow Creek was
given "breathing room" to operate the stations.

 In August 1995, Scott's former wife died in Pennsylvania. Scott was the beneficiary of her
life insurance policy and received more than $250,000. In December 1995, following receipt of
these funds, Scott loaned Willow Creek $100,000 as evidenced by two promissory notes. These two
promissory notes, dated December 1, 1995 and December 20, 1995, were signed by McKay in his
capacity as president of Willow Creek. Also in December of 1995, McKay signed an option
agreement that allowed Scott to purchase an additional 37.8 percent of the outstanding shares of
Willow Creek. As security for the $100,000 in loans, McKay, as president of Willow Creek, gave
Scott a second lien security interest in the assets of Willow Creek behind North Star.

 At first, Willow Creek was able to continue operating with the infusion of the loan proceeds
from Scott. Eventually, however, Willow Creek was unable to meet its payment obligations on the
$850,000 loan. North Star served Willow Creek with a notice of default. Willow Creek then
transferred the stations back to North Star for forgiveness of the corporate debt as well as any
personal liability by McKay or Scott. 

 Scott sued McKay in his individual capacity on the two promissory notes totaling $100,000. 
McKay defended Scott's suit by showing that he had signed both of the promissory notes in his
capacity as president of Willow Creek. After a bench trial, the trial court entered a judgment in favor
of McKay and later entered findings of fact and conclusions of law. Scott timely filed this appeal. 


Standard of Review


 Scott raises seven "no evidence" issues on appeal. In determining Scott's no evidence
issues, we are to consider all of the evidence in the light most favorable to McKay, and then indulge
every reasonable inference from the evidence in his favor. See Merrell Dow Pharms. v. Havner, 
953 S.W.2d 706, 711 (Tex. 1997). A no evidence issue may be sustained only when the record
discloses one of the following: 1) there is a complete absence of evidence of a vital fact; 2) the court
is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital
fact; 3) the evidence offered to prove a vital fact is no more than a mere scintilla; or 4) the evidence
conclusively establishes the opposite of a vital fact. Id.


Alter Ego


 We consider Scott's sixth issue first because it overarches the first five issues he presents to
us. In his sixth issue, Scott contends that although McKay signed the two promissory notes totaling
$100,000 in a corporate capacity, he should be held personally liable because he operated Willow
Creek as his alter ego. Generally, if a note contains the name of an organization followed by the
name of an authorized individual and his corporate office, that is a prima facie showing that the
individual signed in a representative capacity and thus is not personally liable on the note. Wolf v.
Little John Corp. of Liberia, 585 S.W.2d 774, 776 (Tex. App. - Houston [1st Dist.] 1979, writ ref'd
n.r.e.). However, an individual can abuse the corporate privilege and, in doing so, cause courts to
disregard the corporate fiction and hold the individual personally liable. See Castleberry v.
Branscum, 721 S.W.2d 270, 271 (Tex. 1986). 

 Alter ego is a basis for disregarding the corporate fiction where a corporation is organized
and operated for personal purposes. See id. at 272. However, failure to comply with corporate
formalities is no longer a factor in considering whether alter ego exists. Hinkle v. Adams, 74
S.W.3d 189, 194 (Tex. App.-Texarkana 2002, no pet.). We cannot disregard the representative
capacity in which a promissory note is signed unless the promisee demonstrates that the person
signing the note caused the corporation to be used for perpetrating an actual fraud on the promisee
for the direct personal benefit of the corporate shareholder or officer. See Tex. Bus. Corp. Act
Ann. art. 2.21, § A (Vernon 2003). 

 Neither Scott nor any witness at trial testified that any of the $100,000 Scott loaned to
Willow Creek in December of 1995 was for the personal benefit of McKay. Scott himself testified
that to his knowledge the $100,000 went into Willow Creek's bank account. He stated that these
funds were used to pay back obligations and salaries. Scott even conceded that some of the money
was used to pay his own salary. Scott failed to produce any evidence that McKay fraudulently used
any of the $100,000 for his personal benefit. Scott's sixth issue is overruled.


Corporate Formalities


 In his first issue, Scott contends there is no evidence that Willow Creek was a chartered
Texas corporation. In his second issue, he contends that there were no shareholder meetings held
by Willow Creek. In his third issue, he contends there was no evidence that any shareholder
meetings were held to elect Willow Creek directors. In his fourth issue, he contends there was no
evidence showing that the $100,000 was used on behalf of Willow Creek. In his fifth issue, he
contends there was no evidence that Willow Creek followed the majority opinion of the board of
directors. Because each of these five issues involve corporate formalities, we will consider them
together. Article 2.21, section A(3) of the Texas Business Corporation Act states:


 A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose
subscription has been accepted, or any affiliate thereof or of the corporation, shall be under no
obligation to the corporation or to its obligees with respect to:


 . . . .


 (3) any obligation of the corporation on the basis of the failure of the corporation
to observe any corporate formality, including without limitation: (a) the failure to
comply with any requirement of this Act or of the articles of incorporation or
bylaws of the corporation; or (b) the failure to observe any requirement prescribed
by this Act or by the articles of incorporation or bylaws for acts to be taken by the
corporation, its board of directors, or its shareholders.


Tex. Bus. Corp. Act Ann. art. 2.21, § A(3) (Vernon 2003).

 According to this statute and the authorities cited above, failure to observe corporate
formalities does not mean that a shareholder or official of a corporation will be personally liable for
any obligations he or she has incurred on behalf of the corporation. See id.; Hinkle, 74 S.W.3d at
194. Each of Scott's five issues is a contention that McKay failed to follow corporate formalities
as established by the Texas Business Corporation Act and that as a result, he should be personally
liable on the notes. However, none of these five issues, even if there were supporting evidence,
would be enough to establish McKay's personal liability on the two promissory notes in this case. 

 Further, we note that there is some evidence in the record to establish that these corporate
formalities were actually fulfilled. The security documents signed by Scott and introduced into
evidence by Scott at trial repeatedly state that Willow Creek is a Texas corporation. The record
further indicates that McKay and Scott were both present when they met with a Palestine attorney
in order to incorporate Willow Creek. 

 The record also shows there were numerous occasions where Scott and McKay met to discuss
the direction of Willow Creek and its business affairs. Scott testified that he, McKay, and McKay's
wife, Alayne, were the three directors of Willow Creek. McKay testified that these three directors
were named in the articles of incorporation. Scott testified that the funds were used to pay corporate
expenses. Further, the security documents signed by Scott also stated that these loan proceeds went
to Willow Creek. Finally, the security documents relating to Scott's loan to Willow Creek contradict
his contention that the opinion of the majority of the board of directors was not followed. These
documents were signed by both Scott and McKay, two of the three Willow Creek directors. Issues
one, two, three, four, and five are overruled.


Nature of the Obligations


 In his seventh and final issue, Scott contends that the two promissory notes totaling $100,000
were the personal obligations of McKay. The following is Scott's final direct testimony during the
trial:



 Now, do you still maintain that the money was lent to Mr. McKay?




 With our history of friendship and his personal assurances to me that it would fix what was wrong and
we would be there and it would be a place where I could work for the rest of my life and be able to pay
for education for my children, just like everybody else is looking for. You know, it was his assurance
and with his assurance alone that my money was safe and this would fix everything that I did it, yes.




 Did you lend it to him or did you lend it to the company?




 The paper work says the company, but I loaned it to my friend because he said we needed it.



 When an individual unambiguously signs a legal instrument as a representative of the
corporation, he is not personally liable. See Tex. Bus. & Com. Code Ann. § 3.402(b)(1) (Vernon
2002). Scott concedes that the paperwork shows that McKay signed the loan documents in his
corporate capacity on behalf of Willow Creek. At trial, Scott failed to show that section 3.402(b)(1)
is inapplicable here. We therefore hold that Scott has failed to show that McKay is personally liable
for repayment of Scott's $100,000 loan to Willow Creek. Scott's seventh issue is overruled. 

 The judgment of the trial court is affirmed.


 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered August 20, 2003.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.























(PUBLISH)



1. North Star is a wholly owned subsidiary of Clyde Runnels Enterprises, whose principal owner was Clyde
Runnels ("Runnels").