**Opinion issued October 4, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00793-CV

———————————

**OCRAM, INC. D/B/A COASTAL FRAMING, MARCO GARZA, AND DANNY HIGGINS, Appellants**

**V.**

**LESLIE BARTOSH AND SANDRA BARTOSH, Appellees**

On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Case No. 09CV2054

**MEMORANDUM OPINION**

Appellants, Ocram, Inc. d/b/a Coastal Framing,[1] Marco Garza, and Danny Higgins, appeal the trial court's judgment finding Garza and Higgins individually responsible for the conduct of Coastal Framing. Garza and Higgins argue that the trial court erred in denying their legal and factual sufficiency challenges on the evidence of piercing the corporate veil. Additionally, Higgins argues that the trial court erred in rendering judgment against him because evidence that he was an owner, shareholder, or affiliate of Coastal Framing was legally or factually insufficient.

We reverse and render.

**Background**

In 2007, Marco Garza incorporated Ocram, Inc., serving as its president and sole director, and began doing business as Coastal Framing. Coastal Framing was a general contractor specializing in home remodeling and construction. Around the same time, Danny Higgins entered into an agreement with Garza whereby the two would obtain and perform construction contracts as Coastal Framing and equally split the profits.

---

[1]     Ocram, Inc. d/b/a Coastal Framing was a defendant at trial, and it is a party to the judgment. Coastal Framing does not raise any issues on appeal, however, and none of the issues raised on appeal could affect the judgment as it relates to Coastal Framing. Accordingly, we do not consider it a proper party to this appeal. *See Gupta v. E. Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 751 n.4 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

Leslie and Sandra Bartosh suffered damage to their home in Galveston, Texas as a result of Hurricane Ike. After reviewing work by Coastal Framing in two other houses, the Bartoshes executed a contract with Coastal Framing to rebuild and remodel their home. The contract was executed on May 8, 2009, and required completion within 14 weeks. It also obligated the company, with few exceptions, to supply all material and workmanship and to obtain all necessary city permits. Additionally, appendices to the contract included a scope of work and a payment schedule, intended to roughly reflect the timetable for project completion. At various points during the period of the contract, the Bartoshes and Coastal Framing added addendums to the contract calling for more work to be performed.

During the contract period, disputes arose regarding construction quality, which required Coastal Framing to recall subcontractors for more work. Because of ongoing disputes, and the lack of project completion, the Bartoshes locked Coastal Framing and their subcontractors out of their home three days after work was to be completed under the contract. One of the issues at trial was how much work was left to be performed at the time of the lock out and how much it would cost to perform that work.

Following the lock out, the parties exchanged letters regarding their dispute. In its letter to the Bartoshes, Coastal Framing attached a refund check in the amount of $10,000 and offered to credit another $6,000 to the amount remaining

3

owed under the contract. The Bartoshes did not respond to this offer, and Coastal Framing ultimately issued a stop payment on the check.

The Bartoshes filed suit against Coastal Framing, as well as Garza and Higgins, individually, seeking damages for breach of contract, breach of warranty, violations of the Deceptive Trade Practices Act ("DTPA"), fraud, and negligence. The trial was held, and the jury was charged with answering questions pertaining to the breach of contract, the breach of warranty, the DTPA violations, and Garza and Higgins's individual responsibility for Coastal Framing's conduct. The jury found that Coastal Framing breached the contract and breached express and implied warranties, and that Garza and Higgins were individually responsible. The jury rejected all of the Bartoshes' DTPA claims, including unconscionability and that Coastal Framing acted knowingly. The trial court entered judgment on the jury verdict and awarded damages in the amount of $40,875, attorneys' fees in the amount of $22,500, and post judgment interest.

## Legal and Factual Sufficiency

In their first and second issues on appeal, Garza and Higgins argue the evidence is legally and factually insufficient to pierce the corporate veil and hold them personally liable on the contract.

4

## A.    Standard of Review

"The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "[L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable [fact finders] could, and disregard contrary evidence unless reasonable [fact finders] could not." *Id.* "If the evidence . . . would enable reasonable and fair-minded people to differ in their conclusions, then [fact finders] must be allowed to do so." *Id.* at 822. "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *Id.* Although the reviewing court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it, if the evidence allows only one inference, neither fact finder nor the reviewing court may disregard it. *Id.*

To determine whether the evidence is factually sufficient to support a finding, an appellate court considers and weighs all evidence that was before the trial court. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When an appellant attacks the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and

5

manifestly unjust. *See id.* As the reviewing court, we may not act as fact finder and may not pass judgment on the credibility of witnesses or substitute our judgment for that of the trier of fact. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

## B.    Analysis

The Legislature has placed strict restrictions on a contract claimant's ability to pierce the corporate veil. The Texas Business Organizations Code provides, in pertinent part, that a shareholder ("holder")

> may not be held liable to the corporation or its obligees with respect to . . . any contractual obligation of the corporation . . . on the basis that the holder . . . is or was the alter ego of the corporation or on the basis of actual or constructive fraud, sham to perpetrate a fraud, or other similar theory . . . .

TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2) (Vernon 2011). The statute provides an exception to this limitation by permitting the use of alter ego or other similar theory, to impose liability on a holder "if the obligee demonstrates that the holder . . . caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder." TEX. BUS. ORGS. CODE ANN. § 21.223(b).

In other words, alter ego or other similar theories may be used to pierce the corporate veil *only if* (1) actual fraud is shown and (2) it was perpetrated primarily for the direct personal benefit of the corporation's holder. *Id.* Actual fraud

6

involves dishonesty of purpose or intent to deceive. *Castleberry v. Branscum*, 721 S.W.2d 270, 273 (Tex. 1986) (distinguishing actual fraud from tort definition of fraud). A holder's liability for an obligation under this statute is "exclusive and preempts any other liability imposed for that obligation under common law or otherwise." TEX. BUS. ORGS. CODE ANN. § 21.224 (Vernon 2011); *see also Willis v. Donnelly*, 199 S.W.3d 262, 272 (Tex. 2006) (emphasizing that statutory exclusivity precludes the use of common law veil-piercing theories).

Garza and Higgins argue that there is no evidence they perpetrated an actual fraud against the Bartoshes for their direct personal benefit. They argue that the Bartoshes were aware they were contracting with Coastal Framing, and no evidence is present of any dishonesty of purpose or intent to deceive. The Bartoshes respond that evidence of pre-contractual representations of the company's work product and Garza and Higgins's operation of the business was sufficient to support the jury's finding.

We turn to whether there was any evidence of actual fraud. Any evidence must relate to the transaction at issue, namely, the contract between Coastal Framing and the Bartoshes. *See Menetti v. Chavers*, 974 S.W.2d 168, 175 (Tex. App.—San Antonio 2008, no pet.); *see also Rutherford v. Atwood*, No. 01-00-00113-CV, 2003 WL 22053687, *4 (Tex. App.—Houston [1st Dist.] Aug. 29,

2003, no pet.) (mem. op.) (following requirement that fraud relate to the transaction at issue).

The Bartoshes argue on appeal that Garza or Higgins's misrepresentations as to the quality of workmanship and purported models of their previous work are sufficient to support actual fraud. As Garza and Higgins point out, however, these alleged misrepresentations formed the basis of the Bartoshes' DTPA claims.

The Bartoshes sought liability under the DTPA on the grounds that Garza and Higgins, as representatives of Coastal Framing, misrepresented the quality of their workmanship and deceived the Bartoshes by presenting them with an "exemplar" of Coastal Framing's work when Garza and Higgins had not performed all of the work at that home. The jury rejected these claims, however, and found no violation of the DTPA.

The laundry list prohibitions under the DTPA, which is what the Bartoshes attempted to apply in their suit, impose liability even when a person does not know his conduct is false, misleading, or deceptive. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(5), (7) (Vernon 2011); *Pennington v. Singleton*, 606 S.W.2d 682, 689 (Tex. 1980). The actual fraud element to piercing a corporate veil, in contrast, requires intentional dishonesty or deception. *Castleberry*, 721 S.W.2d at 272. The jury found insufficient evidence to support even *unintentional* deceptive behavior.

8

*See Pennington*, 606 S.W.2d at 689. Accordingly, the same evidence would also fail to support a heightened level of *intentional* dishonesty of purpose or deception.

In the charge, the jury determined that Coastal Framing did not act knowingly, or engaged in unconscionable, false, misleading, or deceptive acts. The Bartoshes have not challenged these findings, and unchallenged fact findings are binding on the appellate court. *See Beal Bank, SSB v. Biggers*, 227 S.W.3d 187, 191 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Because the jury rejected any allegation of fraud in the Bartoshes' DTPA claim, those same facts cannot support a finding of actual fraud for supporting piercing the corporate veil. *See Willis*, 199 S.W.3d at 272 (rejecting as basis for piercing corporate veil allegations forming basis of separate fraud claim that was rejected by jury).

Next, the Bartoshes argue the jury could have found actual fraud from evidence that Garza signed Leslie Bartosh's name on the building permit application. On May 19, 2009, Garza signed for both owner and contractor on the permit application. Garza signed Leslie Bartosh's name to the owner line and his own as the contractor. On June 30th, he signed the actual permit with his own name as contractor. The Bartoshes testified that they were aware the permit had been obtained, but did not see it, telling Garza to keep it with the project file. The Bartoshes became aware of the forged signature after the lockout, when gathering documents in preparation for this suit.

9

While the jury did hear opinion testimony that this practice is dishonest, and may not be regular in the home construction business, the Bartoshes identify no harm to either them or the contract that resulted from such conduct. Under the contract, Coastal Framing was obligated to obtain all necessary city permits. The claim for actual fraud for piercing the corporate veil must be connected to the underlying cause of action. *See id.* (considering whether actual fraud was established by considering underlying cause of action for fraud). That is, a party cannot pierce the corporate veil based on an allegation of actual fraud that is unrelated to any harm suffered by the party.

The claims here are for breach of contract and DTPA violations. There is no evidence in the record suggesting that Garza's signing of Leslie Bartosh's name in the application for a permit in any way harmed the Bartoshes. Additionally, as discussed above, the jury rejected the Bartoshes' DTPA claims. Absent evidence of harm or causation there can be no finding of actual fraud.

Moreover, in order to pierce the corporate veil, the Bartoshes were required to establish that Garza and Higgins committed the actual fraud for their direct personal benefit. TEX. BUS. ORGS. CODE ANN. § 21.223(b) (Vernon 2011). Even if signing Leslie Bartosh's name on the permit application could be a basis for actual fraud, there is no evidence in the record that it was done for Garza's or Higgins's direct personal benefit.

10

The Bartoshes also argue that Coastal Framing's forfeiture of its corporate charter and subsequent reinstatement when litigation appeared imminent is evidence of actual fraud. The company failed to pay its franchise tax on August 7, 2009—one week before the contract was to be completed—causing the forfeiture. The charter was reinstated in October, when Coastal Framing's bank made it aware of the deficiency. This was several weeks before the Bartoshes filed suit. Garza and Higgins argue that this could not constitute evidence of actual fraud and that the forfeiture was merely an oversight.

Section 21.223(a)(3) of the Texas Business Organizations Code provides, in pertinent part, "A holder . . . may not be held liable to . . . obligees with respect to . . . any obligation of the corporation on the basis of the failure . . . to observe any corporate formality." TEX. BUS. ORGS. CODE ANN. § 21.223(a)(3). A corporation is statutorily entitled to have its charter reinstated if it pays the delinquent franchise tax and any penalties or interest imposed. *See* TEX. TAX. CODE ANN. §§ 171.312, .313 (Vernon 2008). Additionally, reinstatement of a corporation's charter is retroactive, as though the forfeiture never existed. *Hinkle v. Adams*, 74 S.W.3d 189, 193-94 (Tex. App.—Texarkana 2002, no pet.). If there is a statutory right to reinstate a corporate charter, forfeiture does not extinguish the corporation as a legal entity. *Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 601 (Tex. App.—Houston [14th Dist.] 1994, writ denied). The jury heard testimony

11

that Coastal Framing's corporate charter had been reinstated by the Secretary of State. Accordingly, this cannot be a basis for finding actual fraud.

Finally, the Bartoshes argue that Coastal Framing's undercapitalization was evidence of actual fraud. The jury heard testimony from Garza that Coastal Framing did not have any employees, assets, office buildings, or inventory. Separately, the jury heard testimony that Coastal Framing had at least some assets, in the form of a corporate-owned dump truck and work contracts.

Undercapitalization can be a factor in determining *alter ego*. *Castleberry*, 721 S.W.2d at 272 n.3. But the matter of whether a company is functioning as an alter ego is only reached after it has been established that Garza or Higgins caused Coastal Framing to perpetrate an actual fraud on the Bartoshes for Garza or Higgins's direct personal benefit. *See* TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2), (b). Accordingly, it is not relevant to our inquiry of whether there was actual fraud.

We find no evidence in the record to support a finding of actual fraud in order to pierce the corporate veil. Accordingly, we sustain Garza and Higgins's first issue.[2]

---

[2] Because sustaining the first issue is dispositive of the claims on appeal, we do not reach Garza and Higgins' second and third issues. *See* TEX. R. APP. P. 47.1.

**Conclusion**

We reverse the portion of the trial court's judgment holding Marco Garza and Danny Higgins individually liable for the judgment against Ocram, Inc. d/b/a Coastal Framing and render a take-nothing judgment in favor of Marco Garza and Danny Higgins in their individual capacities.


Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.